FILED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
Southern Division

00 FEB 24  AM 9: 49

U.S. DISTRICT COURT
N.D. OF ALABAMA

ISOM E. TURQUITT,                  )
    Plaintiff;                         )
                                       )
-vs.-                              )          No. CV-95-P-2054-S
                                       )
JEFFERSON COUNTY, ET AL.,          )
    Defendants.                        )          **ENTERED**
                                       )
                                       )          *FEB 24 2000*

OPINION

    The court heard oral argument on three motions at its October 29, 1999 motion docket: the defendants' June 1, 1999 Motion for Summary Judgment; the plaintiff's August 4, 1999 Motion for Leave to Add Defendants; and the defendants' November 12, 1999 Motion to Strike the Plaintiff's Supplemental Response to Defendants' Motion for Summary Judgment.  For the following reasons, the defendants' motion for summary judgment is due to be granted, and their motion to strike is due to be denied.  The plaintiff's motion is due to be denied.

Facts[1]

    In May, 1995, Phillip Turquitt (the plaintiff's decedent) was arrested and booked for failure to appear on two drug warrants.  He was detained in the Jefferson County Jail, classified as nonviolent, and placed on the sixth floor of the jail to await trial.  In June, 1995, Turquitt was relocated to the fifth floor after an altercation with another inmate.

---

[1]The recitation of facts is presented in the light most favorable to the non-moving party.

1

On July 29, 1995, while housed on the fifth floor, Turquitt was attacked and punched by another inmate, James White.  Turquitt subsequently died from his injuries.  White, who is mentally ill, had been incarcerated at the jail since August, 1993, for sexual abuse.  In February, 1995, he had been sentenced to a fifteen-year split sentence, with three years to be spent at Bryce Hospital.  At the time of his attack on Turquitt, he was on a waiting list at Bryce, which had no beds available.

According to the defendant, when White arrived at the jail, he was classified by the booking officer as non-violent and psychiatric.  On three earlier occasions, White had been incarcerated and classified at the jail.  All three times, he was classified as violent.  *See* Pl.'s Ex. 11.

Prior to his incarceration, White had been an inpatient at a number of hospitals for mental illness.  In September, 1994, White received a psychiatric evaluation which noted that he was "loose," "paranoid" and had auditory hallucinations.  See Pl.'s Ex. 5.  Between July 12, 1995 and July 29, 1995 (the date White killed Turquitt) White did not receive his anti-psychotic medication, and his psychiatric social worker was not notified.  *See* Dep.of Donna Click, 140-45.

Susan Turquitt, as administratrix of the estate of Phillip Turquitt (his mother), brought suit under § 1983 and § 1988 against Jefferson County, Sheriff Melvin Bailey and Captain Jim McCreless in their official and individual capacities.  She alleged that the defendants were deliberately indifferent to widespread violence at the county jail in violation of the Eighth and Fourteenth Amendments to the United States Constitution.  On September 26, 1995,  Isom E. Turquitt (the decedent's father), who remains as plaintiff in this action, was substituted for Susan Turquitt.  He filed an amended complaint alleging that the jail lacked a classification system, was

2

inadequately supervised, and was subject to severe overcrowding.

On May 26, 1998, Judge Robert B. Probst (to whom this case was originally assigned) dismissed all claims against Jefferson County in accordance with the Eleventh Circuit's opinion in *Turquitt v. Jefferson County, et al.*, 137 F.3d 1285 (11th Cir. 1998). In December, 1998, this case was reassigned to the undersigned. In June, 1998, defendant McCreless filed a Suggestion of Death for defendant Bailey. Bailey was replaced in his official capacity by Sheriff Hale pursuant to Fed. R. Civ. P. 25(d)(1). During the time that these motions were under submission, Sheriff Hale was replaced by Jim Woodward, who, under Rule 25, substitutes for Hale in his official capacity. Both defendants, Sheriff Woodward and Captain McCreless, move for summary judgment in their official capacities on the grounds that they are immune from suit for damages under the Eleventh Amendment, and that the plaintiff lacks standing to seek injunctive relief. In his individual capacity, the sheriff argues that he is not liable because there was no proper substitution after the death of defendant Bailey. Captain McCreless asserts that he is not liable as an individual because he was not deliberately indifferent to the conditions at the jail which ultimately led to Phillip Turquitt's death and that even if he had been so indifferent, he is entitled to assert qualified immunity to the plaintiff's claims.

I.      Defendants' Motion for Summary Judgment

A.  Sheriff Woodward

The plaintiff originally sued Sheriff Bailey in both his individual and official capacities. As the plaintiff failed to seek substitution for Bailey in his individual capacity after the suggestion of death was filed, claims against the sheriff in his individual capacity are due to be dismissed.

3

It is undisputed by the parties that the sheriff and his deputies, in their official capacities, are immune from suits for damages under the Eleventh Amendment. *See Carr v. City of Florence, Alabama*, 916 F.2d 1521, 1525-26 (11th Cir. 1990) (holding that a sheriff is a state officer who is entitled to assert Eleventh Amendment immunity). In *Carr*, the Eleventh Circuit explicitly recognized that in a suit against the sheriff, the state is the real party in interest because an award of money damages would be paid from state coffers. *See id.* at 1524 (citing *Edelman v. Jordan*, 415 U.S. 651, 663 (1974)). *Carr* noted, however, that a sheriff could not assert immunity in suits for injunctive relief. *See id.* at 525.

In his complaint the plaintiff requests that the court enjoin the defendants from the alleged unconstitutional conduct; however, he has no standing to seek prospective injunctive relief under *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). Lyons sued Los Angeles when, in the course of a traffic stop, he was subject to a police chokehold that rendered him unconscious. In *Lyons*, the Supreme Court held that a plaintiff must demonstrate "a personal stake in the outcome" of a case, *Id.* at 101 (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)); such that he either "has sustained, or is immediately in danger of sustaining" some injury as a result of the defendant's conduct. *Id.* at 101-02. The Court held that Lyons had no standing to enjoin the City from further use of the chokeholds because he did not make a reasonable showing that he would again be subject to the defendant's illegal conduct.[2]

It would not be possible for the plaintiff's decedent to be incarcerated again in the Jefferson

---

[2]The Court also rejected Lyons' argument that his claim fell under the rule that a claim does not become moot when it is capable of repetition yet evades review, noting "the capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality." *Lyons*, 461 U.S. at 109. Consequently, that doctrine doe not apply here.

County Jail, and there is no evidence that the plaintiff, his father, would ever be subject to incarceration. Therefore, the plaintiff lacks standing to seek injunctive relief from the sheriff in his official capacity, and all claims against Woodward are due to be dismissed.

B. Captain McCreless

Captain McCreless was assigned to the Jefferson County Jail in February or March, 1995, as second-in-command at the jail. As an agent of the sheriff, McCreless is a state official, and as such, summary judgment is due to be granted as to claims for damages against him in his official capacity because he is immune under the Eleventh Amendment. Additionally, as discussed above, the plaintiff has no standing to sue for injunctive relief, so those claims against McCreless are due to be dismissed as well.

A plaintiff alleging Eighth Amendment violations[3] against a prison official in his individual capacity must show that the conditions of incarceration rose to the level of a serious deprivation and resulted from the official's deliberate indifference to the conditions of the jail and the treatment of the inmates. *See Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999). In order to succeed on his claims against McCreless in his individual capacity, the plaintiff must provide credible evidence from which a jury could conclude that McCreless manifested deliberate indifference to a substantial risk of serious harm to the plaintiff posed by conditions at the jail and classification of inmates. To show "deliberate indifference," the plaintiff must show that

---

[3]As Turquitt was a pretrial detainee, and not a convicted inmate of the jail, his claim is more properly framed as a violation of his Fourteenth Amendment due process rights. However, his claims may be analyzed under the Eighth Amendment as "states may not impose on pretrial detainees conditions that would violate a convicted prisoner's eighth amendment rights." *See Hamm v. DeKalb County*, 774 F.2d 1567, 1573-74 (11th Cir. 1985).

McCreless had more than "[m]ere knowledge of a substantial risk of serious harm," but must produce evidence that McCreless had such knowledge and "knowingly or recklessly 'disregarded that risk by failing to take reasonable measures to abate it.'" *Hale v. Tallapoosa County*, 50 F.3d 1579, 1583 (11th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).[4]

The plaintiff contends that McCreless knew that housing mentally ill individuals such as White with the general population at the jail created an excessive risk to other inmates, and consciously disregarded that risk. As evidence, the plaintiff offers classification forms from White's three previous incarcerations, which classify him as mentally ill and violent. In May, 1990, he was classified as psychiatric, violent; in September, 1990, he was classified as violent; and in October, 1992, he was classified as violent. *See* Pl.'s Ex. 11. It is unclear from the testimony offered by the parties how much of this information was available to the booking officer at the time of White's 1993 incarceration.[5] The plaintiff also offers substantial evidence that

---

[4]The defendant also argues that if McCreless is found to have been deliberately indifferent, he has qualified immunity from liability. If the court had determined that the defendant was deliberately indifferent towards Phillip Turquitt's constitutional rights, he would have been unable to assert qualified immunity because in showing deliberate indifference, the plaintiff would have shown that McCreless had violated clearly established law. Because the court finds that McCreless was not deliberately indifferent to conditions at the jail, however, it is unnecessary to address whether he can properly assert qualified immunity.

[5]For example, the plaintiff offers this testimony from Fordier Jones, who classified and booked White, and placed him on the fifth floor:
Q: If the questions on this questionnaire are what you use to determine the classification– or the placement of an inmate, if his answers on prior classification forms were different than the answers he gave you, would that be important for you to know?
A: It would be if I had access– if I could see the prior classification. The only thing I have to go buy is his- last time he was in jail or whatever when he was in jail before.
Q: But when you– when you just looked at Plaintiff's Exhibit 1, which was the classification for Mr. White, you did not use any prior records, did you?
A: As far as that classification, no.
Q: So you do not know– when you classified him as to which place he should be placed in the jail, you didn't– you were unaware as to his previous psychiatric history; correct?
A: The only thing I would have to go by is his previous booking, last time he was booked in the jail how he was classified.
Q: So did you have the last classification when you looked at this one?

White had not received his anti-psychotic medicine for the seventeen days leading up to Phillip Turquitt's death and his psychiatric social worker was not notified.

The plaintiff also offers testimony from Captain McCreless that an inmate's prior admissions to Taylor Hardin and earlier classifications at the jail were important information to be considered by the booking officer. McCreless testified that he was unsure what information is available to the officer via computer at the time an inmate is assigned to a location in the jail, and but he is sure that booking officers have access to files containing the information. *See* McCreless Dep. at 38-41. In his affidavit, McCreless admits that male inmates charged with a violent offense were assigned to the eighth floor and inmates with psychiatric problems were housed on the third floor. White was housed on the fifth floor. The defendant offers testimony suggesting that inmates with medical or other special needs were routinely assigned to this floor when other floors did not have beds available. *See* Anderson Dep. at 50-52.

As the defendants point out, it is undisputed that a classification system exists at the jail by which inmates are classified by their medical and psychiatric conditions, their convicted or pretrial status, and whether or not they are violent and pose a risk to themselves or others. The

---

A. Not the classification form. What I'm saying is that once we run it through the computer and everything, his record– his history of jail is in that computer.
Jones Dep. 66-67.

The defendant offers testimony from Glen Anderson, a lieutenant at the jail:
  Q: Is there a screen that the classification has available to him to check [prior offenses or prior classifications]?
  A: There is no screen solely for classification. What the officer has is to look back at previous arrest screens and see the arrest– what charges were in the previous.
  Q: So that is something that, if proper policy and procedure is followed, that the officer reviews the prior arrests?
  A: That's part of it, yes, ma-'am.
Anderson Dep. 36-37.

plaintiff faces a very high evidentiary burden: he must present credible evidence from which a reasonable jury could conclude that the defendant knew that mentally ill inmates were being placed in the general population, and consciously and recklessly disregarding the risk such inmates posed, failed to take reasonable steps to rectify the problem.  Although the plaintiff has presented evidence which suggests that in 1993, White was inaccurately assessed and mis-classified as non-violent, the evidence does not implicate McCreless as either knowing about the risk White posed or deliberately disregarding it.  For example, McCreless was first assigned to the jail in February or March, 1995, one and a half years after White was classified and assigned to the fifth floor. Additionally, the evidence does not show that McCreless failed to inadequately supervise or train employees at the jail, or that he ignored overcrowding or understaffing problems.  Accordingly, summary judgment is due to be granted as to the plaintiff's claims against McCreless in his individual capacity.


II      Plaintiff's Motion for Leave to Add Defendants

The plaintiff asks the court for leave to add defendants in this case, claiming that depositions taken in July, 1999, revealed other individuals who should have been named as defendants.  Although this case has had a long history, during which discovery was stayed twice, any claims against additional defendants are barred by the two-year statute of limitations for claims under § 1983.  The plaintiff's motion is therefore due to be denied.


II      Defendants' Motion to Strike

The defendants move to strike the plaintiff's Supplemental Response to the Defendant's

Motion for Summary Judgment, filed November 5, 1999, on the grounds that the motion was out of time. Although, as the defendants point out, Fed. R. Civ. P. 56 requires that a request for additional time to oppose a motion for summary judgment be presented by affidavit, the plaintiff's response is not such a request. Accordingly, the defendants' Motion to Strike is due to be denied.

### Conclusion

For the foregoing reasons, the defendants' motion for summary judgment is due to be granted in full. Both the plaintiff's motion for leave to add defendants, and the defendants' motion to strike are due to be denied.

Date:___*Feb. 23*___, 2000

Judge Sam C. Pointer, Jr.

Service List:
      Wendy Brooks Crew
      J. Fred Wood, Jr.
      Algert S. Agricola, Jr.
      Albert L. Jordan